**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. SAG-26-0014** |
| | * | |
| **JUSTIN MICHAEL REEVES,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\***

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America moves for the detention of defendant Justin Michael Reeves. On January 14, 2026, Reeves was charged by Indictment with three counts of violating 18 U.S.C. § 844(i) (Malicious Destruction of a Building by Means of Fire).   As alleged, over the course of approximately two weeks in May 2025, Reeves set three fires to two different rental dwellings in Baltimore, Maryland.   One of those properties was unoccupied but suffered substantial damage; the other was occupied but, fortunately, no occupants were injured.   Reeves was previously charged with state arson charges in Baltimore City District Court.   Based on the risk of danger he posed to the community, the state court ordered Reeves detained.

This Court should do the same.   Reeves poses a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A) and, as Pretrial Services concluded, "no condition or combination of conditions will reasonably assure" Reeves' appearance at future proceedings and "no condition or combination of conditions will reasonably assure. . . the safety of any other person and the community."   *See* 18 U.S.C. § 3142 (e)(1); *id*. § 3143(c).

## BACKGROUND

Reeves has been charged for setting three fires at two different locations in the Hampden neighborhood of Baltimore over the course of two weeks in May 2025.   The three fires are

1

described in more detail below.

## I.    Fire 1: May 10, 2025, at 3447 Keswick Road, Baltimore

On May 10, 2025, in the early morning hours, Reeves set the first fire at 3447 Keswick Road.  Baltimore City Fire Department personnel responded around 3:21 a.m., and observed an active fire burning on the exterior garage door of a vacant dwelling.  An accelerant-detection canine was deployed and alerted to the presence of an ignitable liquid.  The fire was ultimately classified as an arson.

Law enforcement recovered surveillance footage from the neighboring property.  That footage depicts a bearded white male, later identified as Reeves, wearing a black Air Jordan hoodie.  The footage shows Reeves ignite a fire under the stairs of the structure shortly before 1 a.m., and Reeves can be seen returning to the fire at several points over the course of the following hour.  The footage shows Reeves adding fuel to the fire at various points and observing the fire he has set.  Location information from Reeves' cell phone shows that his phone was in the immediate area behind 3447 Keswick Road during the time that Reeves can be seen on the surveillance footage setting and observing the fire.

The hoodie seen in the surveillance footage, which features a logo on the front and distinctive writing on the back, has repeatedly been linked to Reeves: he reported it stolen in a recorded interaction with police in April 2024 but officers were able to return the hoodie to him and Reeves took possession of it on April 2, 2024; officers surveilling Reeves saw him wearing the hoodie on May 27, 2025; and Reeves was wearing the hoodie when he was arrested by state

officers for arson on May 28, 2025.   Images of Reeves at the site of the first fire, as well as images of him wearing the same sweater at later dates, are below:



*Footage displaying the suspect and his clothing at Fire 1*



*Footage displaying the suspect observing Fire 1.   Note the "AIR JOR DAN" writing on the back of the hoodie*



*May 27, 2025: surveillance footage of Reeves wearing an identical "AIR JOR DAN" sweater*





*May 28, 2025: Reeves at the time of his arrest wearing an identical "AIR JOR DAN" sweater*

## II.    Fire 2: May 14, 2025, at 3447 Keswick Road, Baltimore

Four days later, on May 14, 2025, Reeves returned to 3447 Keswick Road and set another

fire there.   Shortly after 2 a.m., fire department officials responded to an active fire at the rear of

the vacant dwelling.   By that point the fire had spread to a neighboring dwelling.   The May 14

fire was also classified as an arson.

Once again, officials recovered surveillance footage from the vicinity. The footage shows an individual matching the build of the suspect from the first fire, wearing a neon green or yellow hoodie, dark pants, and holding a colored umbrella. The individual is seen walking back and forth in the area before and after the fire was set. Notably, the neon sweater matches one Reeves is seen wearing in recorded interactions with police in April 2024 (when Reeves reported a theft) and on May 25, 2025 (when law enforcement encountered Reeves near a third fire, discussed in more detail below).

Cell phone location information from Reeves' phone shows that Reeves' phone was in the area immediately in front of and behind 3447 Keswick Road at the time of the second fire. Additionally, the results of a search warrant show that Reeves' phone searched for property-owner information for property on Keswick Road, updates on the causes of the Keswick Road fires, flammable household products, and information related to three other Keswick Road addresses—including 3461 Keswick Road, at which a fire occurred on December 6, 2024.

Cell phone location information also shows that Reeves' phone returned to 3447 Keswick Road on May 16, 2025 (six days after the first fire and two days after the second fire), where it took photos of the burnt dwelling showing the damage the fires caused.

### III.    Fire 3: May 25, 2025, at 1231 W. 37th Street, Baltimore

Reeves' arson spree continued. On May 25, 2025, shortly before 1 a.m., fire department personnel responded to a third fire, this time set at 1231 W. 37th Street in Baltimore; that address is approximately half a mile from the Keswick Road fires. This third fire was classified as an arson, and investigators determined that it was set using a combination of charcoal and other flammable materials. 1231 W. 37th Street was occupied by a sleeping resident but, fortunately,

the fire was extinguished before it could spread significantly.   Officers subsequently learned that Reeves had previously lived at 1231 W. 37th Street from December 2014 to November 2015.

Officers once again obtained surveillance footage of the vicinity, which showed a white male with a beard, wearing the same neon hoodie seen in connection with the second fire at 3447 Keswick Road, and a black backpack.   The individual is observed walking back and forth near the scene and leaving the area at around 12:29 a.m., approximately 28 minutes before the fire department responded.   Later footage captured the same individual, this time wearing a white T-shirt without the hoodie, walking in the vicinity of the fire around the time it was burning.   Cell phone location information put Reeves' phone in an area less than a quarter mile from the third fire between 11:32 p.m. on May 24 and 12:14 a.m. on May 25.

At 2:28 a.m., an anonymous 911 caller reported an individual wearing a "lime green (neon green) sweatshirt and black backpack" walking near the intersection of W. 36th Steet and Falls Road.   That intersection is approximately 0.2 miles away from the location of the 1231 W. 37th Street fire.   The anonymous caller detailed that the individual observed was the same "male who supposedly set the fires" in the area (referring to the nearby recent Keswick Road fires).   Twelve minutes later, a police officer responded and encountered a man who identified himself as Reeves at the location the 911 caller described.   Body-worn camera footage shows Reeves wearing a neon hoodie matching the one worn by the individual portrayed on surveillance footage obtained in connection with the second fire at 3447 Keswick Road.   After a brief interaction with the officer, Reeves was allowed to depart.

Minutes after his encounter with the police officer, at 2:50 a.m., Reeves' phone placed an outgoing call.   Approximately half an hour later, at 3:21 a.m., Reeves messaged an individual and stated, "If anyone calls you and asks if I was working with you please do me a huge favor and say

7

yeah."

## IV.  Reeves' State Arrest and Additional Investigation

On May 28, 2025, Reeves was arrested and charged with state arson charges in Baltimore City District Court for the three fires described above.  The state court ordered that he be held without a bond based on the risk of danger he posed to the community.

Following his state arrest, federal investigators obtained a warrant for the contents of Reeves' cell phone.  As described above, the results of this warrant revealed that Reeves' phone was in the immediate vicinity of all three fires at the time they were set or burning, and it returned to the scene of the first two fires where it was used to photograph the damage to the dwelling. Additionally, Reeves used his phone to search for: information about fires in the Hampden neighborhood of Baltimore; property and property-owner information for property on Keswick Road; flammable household products; and other fires that occurred in Baltimore City.

Additionally, investigators observed a Facebook Messenger conversation between Reeves and another individual, understood to be a coworker, from December 16, 2024, in which Reeves stated he made a "mistake" and "[a] house is no longer there."  The coworker asked if Reeves burned a house down, and Reeves responded, "A house."  The coworker stated that that is arson. Reeves responded "Yeahhhhhhh I knowwwww" and then asked the coworker not to repeat this information.  This conversation occurred before the May 2025 fires that have been charged, but after other fires that have occurred in the Hampden neighborhood.

## **STANDARD**

The Bail Reform Act, 18 U.S.C. § 3142(f), allows for pretrial detention in certain cases. Section 3142(f) provides that a hearing should be held in case where, among other things, there is "a serious risk that such person will flee."  § 3142(f)(2)(A).  At a detention hearing, if "the

8

judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."   § 3142(e)(1).

A finding that the defendant presents a serious risk of flight (thus permitting a hearing) and is not likely to appear (thus warranting detention) must be supported by a preponderance of the evidence. *See United States v. Vane*, 117 F.4th 244, 251 (4th Cir. 2024).   The serious-risk-of-flight standard "requires showing that it is more likely than not that a serious risk of flight exists, not that it is more likely than not that the defendant will flee."  *United States v. Perez-Vasquez*, 2025 WL 1248651, at *7 (N.D.N.Y. Apr. 22, 2025).   While the standards for a detention hearing (risk of flight) and detention itself (likelihood of non-appearance) are worded differently, they are commonly and appropriately considered and resolved at the same hearing.  *See United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023).

Under § 3142(g), the court is directed to consider a multitude of factors, including the nature and circumstances of the offense charged, the weight of the evidence against the person, and the history and characteristics of the person (including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings").

## **ARGUMENT**

Reeves should be detained because he poses a serious risk of flight and there is no condition or combination of conditions that will ensure the safety of the community.  For the sake of efficiency, the government addresses the Section 3142(g) factors in the following section as it relates to both the threshold question of whether there is a serious risk of flight as well as the merits

9

question of whether there are conditions that can reasonably assure the defendant's appearance and the safety of the community.

*First*, the nature and circumstances of the offense weigh in favor of finding that the defendant poses a serious risk of flight and in favor of detention. Reeves is charged with setting three fires over the course of approximately two weeks in May 2025. He struck the same location (3447 Keswick Road) twice, substantially damaging it. The dwelling was vacant, but the fire could of course have spread to other properties, endangering others. The site of the third fire was an occupied dwelling, and in fact a resident was sleeping in the property at the time Reeves set the fire. That fire fortunately was extinguished before it could get out of control and no one was injured. But Reeves gravely endangered others—occupants, neighbors, and first responders— with every fire he set. Additionally, was arrested by state authorities just days after he set the third charged fire. Given that he committed arson three times in the space of approximately two weeks, there is every reason to believe that he would have continued in his spree until and unless he was apprehended. If Reeves is released, he will continue to pose a serious danger to the public.

Indeed, Reeves appears to have a deeply troubling fascination with setting fires, even separate from the fires with which he is charged. His cell phone internet history shows that he repeatedly searched for fires in the Hampden neighborhood of Baltimore, and he conducted internet searches about another fire that occurred on Lanvale Street in Baltimore City on May 12, 2025. As stated above, Reeves also had a conversation via Facebook Messenger with a coworker on December 16, 2024, in which Reeves appears to admit to burning down a house; this conversation took place well before Reeves set any of the fire charged in this case.

*Second*, Reeves has a strong incentive to flee because the weight of the evidence against him is very strong and he faces a mandatory minimum of five years' imprisonment and up to

10

twenty years with respect to each of the charges against him.   *See* 18 U.S.C. § 844 (setting forth mandatory minimum and maximum sentences).   As outlined above, the evidence against Reeves is extensive.   There is surveillance footage with respect to all three arsons, including footage showing Reeves igniting a fire on May 10, 2025, at 3447 Keswick Road, spreading fuel on it, and watching it burn.   Additional footage shows Reeves in the immediate vicinity of the second and third fires at the relevant time.   Reeves also appears to have asked another individual to falsely corroborate an alibi for Reeves in connection with the third fire:   Police responding to a 911 call at the third fire encountered Reeves in the vicinity, and shortly after that encounter ended, Reeves messaged an individual, stating "[i]f anyone calls you and asks if I was working with you please do me a huge favor and say yeah."

Cell phone location information also places Reeves' phone in the immediate vicinity of all three fires in the early morning hours when the fires were set and burning, and Reeves' phone was used to take photos of the damage to the 3447 Keswick Road property days after the second fire at that location was set.   Cell phone search history shows that Reeves searched for information about flammable household products, searched for information about the Keswick Road fires and other fires, and repeatedly sought information about properties and residents of Keswick Road. And Reeves had a personal connection to the site of the third fire; he lived at 1231 W. 37th Street in 2014 and 2015.   All of this evidence makes it likely that Reeves will be convicted and sentenced to a yearslong period of incarceration.   He has every reason to flee those consequences.

*Third*, the defendant's history and characteristics militate in favor of finding a risk of flight and ordering detention.   To begin, Reeves has a history of violence that extends to his own mother—whom he proposes, remarkably, as his third-party custodian.   Reeves denied "ever having any domestic violence problems" to Pretrial.   Pretrial Rpt. at 2.   That denial was false.

As Pretrial Services reported in their Addendum, a protection order was entered against the defendant in favor of his mother for one year, throughout 2016.  Pretrial Add. at 1.  In 2023, he was also charged with second degree assault, reckless endangerment, and deadly weapon with intent to injure; the alleged victim was his mother.  While those charges were dropped, Reeves' mother acknowledged to Pretrial Services apparently *separate* "domestic violence related issues in the past," which evidently relate to his cousin.  Add. at 1.  This history of violence, taken together with the nature of the charged offenses, makes clear the danger that Reeves poses to the community.  And the fact that Reeves has a demonstrated history of violence *against his proposed third-party custodian* makes clear that his proposed release plan is unworkable.[1]

Separate from this history of violent conduct, Reeves' other characteristics are discouraging.  Reeves admitted to Pretrial Services a problematic relationship with alcohol.  He stated that he first began consuming alcohol at age 14 or 15 and drank on a daily basis between the age of 20 and shortly before his arrest in May 2025 (at which time he was 28 years old).  That history of apparent substance abuse underscores Reeves' unreliability and risk of nonappearance.  Reeves also has been diagnosed with ADHD, which appears to be untreated.  Reeves stated that he was diagnosed with ADHD as a child and participated in counseling as a child, but has "never participated in mental health counseling during his adult years."  Pretrial Rpt. at 2.  Further adding to this picture of unstable circumstances, Reeves was unemployed for two months before he was arrested on state charges in May 2025.

Given the serious nature of the offense, the defendant's powerful incentive to flee, and his

---

[1] Further rendering the proposed release plan unworkable, Reeves' mother lives with an individual who was convicted of rape offenses in the 1990s and served 10 years' imprisonment.  That same individual was charged with second degree assault in 2005.  Pretrial Add. at 2.

history and characteristics, no condition or combination of conditions can reasonably assure his appearance or the safety of the community.   "Even the Court's most powerful condition—home incarceration with GPS monitoring—is effective only with a defendant committed to remaining and appearing.   Otherwise, GPS is effective only in limiting a defendant's head start; it cannot assure that he will not flee."   *United States v. Salgado*, No. CR 20-53JJM, 2020 WL 4747931, at *7 (D.R.I. Aug. 17, 2020).   For the reasons set forth above, there is no reason to believe the defendant is "committed to remaining and appearing" before the Court.   And there is every reason to believe that Reeves poses a profound danger to the community.   Accordingly, the defendant should be detained.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:       _____/s/_____

Spencer L. Todd
Paul E. Budlow
Assistant United States Attorneys